**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JAMES MASSENGILL

          Plaintiff,                  Case No. 6:22-cv-01549-CEM-LHP

v.

A. DUDA & SONS INC.

          Defendant.

_____/

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

      Defendant A. Duda & Sons, Inc. ("Duda") moves to dismiss Plaintiff James Massengill's ("Plaintiff") Complaint (Doc. 1), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

                                                  */s/ Jessica Kramer*
                                                  Jessica S. Kramer
                                                  Florida Bar No. 125420
                                                  100 N. Tampa St., Suite 4100
                                                  Tampa, FL 33602
                                                  Phone: (813) 227-8500
                                                  jessica.kramer@hklaw.com
                                                  *Attorney for Defendant*

# Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ..................................................................................... 1

LEGAL STANDARD ............................................................................... 3

    A.   Rule 12(b)(1) ............................................................................. 3

    B.   Rule 12(b)(6) ............................................................................. 4

ARGUMENT AND MEMORANDUM OF LEGAL AUTHORITY ............................. 5

  I.   Plaintiff Lacks Standing. .................................................................. 5

    A.   Plaintiff Fails to Allege An Injury in Fact. .................................... 5

      1.   Plaintiff Fails to Allege a Concrete Injury. ............................. 6

      2.   Plaintiff Fails to Allege an Imminent Injury. ........................ 11

    B.   Plaintiff Fails to Allege Any Fairly Traceable Harm ..................... 14

  II.   Plaintiff Fails to State Claims for Which Relief Can be Granted. .............. 15

    A.   Plaintiff Fails to State a Negligence Claim. ................................. 15

    B.   Plaintiff Fails to State a Breach of Implied Contract Claim. ................. 17

    C.   Plaintiff Fails to State an Intrusion into Seclusion Claim ..................... 18

    D.   Plaintiff Fails to State an Unjust Enrichment Claim. ........................... 21

  III.   Conclusion. ................................................................................ 23

LOCAL RULE 3.01(G) CERTIFICATION ............................................... 23

# Table of Authorities

**Page(s)**

## Cases

*In re 21st Century Oncology Cust. Data Sec. Breach Litig.*,
380 F. Supp. 3d 1243 (M.D. Fla. 2019)............................................................10

*Allgood v. PaperlessPay Corp.*,
3:20-CV-516-MMH-MCR, 2022 WL 846070 (M.D. Fla. Mar. 22,
2022).........................................................................................20, 21, 22

*Allstate Ins. Co. v. Ginsberg*,
863 So. 2d 156 (Fla. 2003) .................................................18, 19, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................... 5, 16, 19

*Baron v. Syniverse Corp.*,
8:21-CV-2349-SCB-SPF, 2022 WL 6162696 (M.D. Fla. Oct. 7,
2022).........................................................................................8, 10, 12, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................4, 5, 15, 16

*In re Brinker Data Incident Litig.*,
3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27,
2020) ..................................................................... 16, 17, 22

*C.P. v. Tampa Bay Surgery Ctr., Inc.*,
8:17-CV-1540-T-30AEP, 2017 WL 3732102 (M.D. Fla. Aug. 30,
2017) ..................................................................... 11

*Cafra v. RLI Ins. Co.*,
8:14-CV-843-T-17EAJ, 2015 WL 690687 (M.D. Fla. Feb. 18,
2015) ..................................................................... 1

*Clapper v. Amnesty Intern. USA*,
568 U.S. 398 (2013) ..............................................................*passim*

*Collectarius Fin., LLC v. Statebridge Co.*,
LLC, 8:18-CV-137-T-24 AEP, 2018 WL 807041 (M.D. Fla. Feb. 9,
2018) ..................................................................... 15

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .......................................... 14

*DiMaio v. Dem. Nat. Comm.*,
520 F.3d 1299 (11th Cir. 2008) ............................................3

*Eldridge v. Pet Supermarket Inc.*,
    446 F. Supp. 3d 1063 (S.D. Fla. 2020) ............................................................9

*Everhart v. Colonial Pipeline Co.*,
    1:21-CV-3559-MHC, 2022 WL 3699967 (N.D. Ga. July 22, 2022) ...................6

*Frater v. Lend Smart Mortgage, LLC*,
    22-22168-CIV, 2022 WL 4483753 (S.D. Fla. Sept. 27, 2022) ..........................10

*Gonzalez v. Kellogg Co.*,
    8:15-CV-32-T-24TBM, 2015 WL 1538151 (M.D. Fla. Apr. 7, 2015) .................. 8

*Hall v. HSBC Mortg. Services, Inc.*,
    581 Fed. Appx. 800 (11th Cir. 2014) ................................................................7

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*,
    641 F.3d 1259 (11th Cir. 2011) ...................................................................... 14

*Hunstein v. Preferred Collection & Mgmt. Services, Inc.*,
    48 F.4th 1236 (11th Cir. 2022) ...................................................................... 13

*Legg v. Leaders Life Ins. Co.*,
    574 F. Supp. 3d 985 (W.D. Okla. 2021) ......................................................... 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..............................................................................11, 14

*Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office*,
    8:12-CV-1589-T-23MAP, 2013 WL 3155280 (M.D. Fla. May 8,
    2013) ............................................................................................................ 15

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917, 933 (11th Cir. 2020) ..................................................................6

*Oppenheim v. I.C. Sys.*,
    695 F. Supp. 2d 1303 (M.D. Fla. 2010).......................................................... 18

*Pankey v. Aetna Life Ins. Co.*,
    6:16-cv-1011-Orl-37GJK, 2017 WL 1089330 (M.D. Fla. Mar. 23,
    2017) ..........................................................................................................3, 5

*Preisler v. Eastpoint Recovery Group, Inc.*,
    20-CV-62268-RAR, 2021 WL 2110794 (S.D. Fla. May 25, 2021)...............11, 12

*Purelli v. State Farm & Cas. Co.*,
    698 So. 2d 618 (Fla. 2d DCA 1997) ............................................................... 19

*Resnick v. AvMed, Inc.*,
    693 F.3d 1317 (11th Cir. 2012).............................................................5, 15, 16

*Rinker v. Carnival Corp.,*
    753 F. Supp. 2d 1237 (S.D. Fla. 2010)................................................................15

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft*
    *Litig.,*
    45 F. Supp. 3d 14, 25 (D.D.C. 2014) ............................................................6, 7

*Sheffler v. Americold Realty Tr.,*
    1:21-CV-1075-TCB, 2022 WL 1815505 (N.D. Ga. Jan. 19, 2022) ....................18

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)........................................................................... 3, 4, 8

*Stapleton on behalf of C.P. v. Tampa Bay Surgery Ctr., Inc.,*
    8:17-CV-1540-T-30AEP, 2017 WL 3732102 (M.D. Fla. Aug. 30,
    2017) .......................................................................................11, 12

*Stephens v. Availity, L.L.C.,*
    5:19-CV-236-OC-30PRL, 2019 WL 13041330 (M.D. Fla. Oct. 1,
    2019) ......................................................................................18, 20

*Stoddard v. Wohlfahrt,*
    573 So. 2d 1060 (Fla. 5th DCA 1991) ........................................................19, 20

*Strickland v. United States,*
    382 F. Supp. 2d 1334 (M.D. Fla. 2005) ..........................................................17

*Torres v. Wendy's Co.,*
    195 F. Supp. 3d. 1278 (M.D. Fla 2016)..........................................................7, 10

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190, 2210-2211 (2021) .................................................................13

*Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.,*
    986 F.3d 1332 (11th Cir. 2021)......................................................*passim*

*Vance v. Southern Bell Tel & Tel Co.,*
    983 F.2d 1573 (11th Cir. 1993) .....................................................................20

*Virgilio v. Ryland Grp., Inc.,*
    680 F.3d 1329 (11th Cir. 2012)......................................................................15

*Welborn v. Internal Rev. Serv.,*
    218 F.Supp.3d 64 (D.D.C. 2016) ...................................................................22

*In re Zappos.com, Inc.,*
    108 F. Supp. 3d 949, 954 (D. Nev. 2015).........................................................22

**Statutes and Other Authorities**

Fed. R. Evid. 201(b)(2) ................................................................................ 1

Restatement (Second) of Torts § 652B (1977) ...................................... 19

Fed. R. Civ. P. 12(b)(1) ............................................................................. 3

Fed. R. Civ. P. 12(b)(6) ............................................................ 3, 4, 15, 22

## Preliminary Statement

Plaintiff's case arises from a data security incident.  Plaintiff alleges that because he provided some form of personal information to Duda and because Duda's systems were compromised, Plaintiff "ha[s] suffered and will suffer" various harms.  But these alleged harms either have not materialized, or they are not concrete injuries as a matter of law, or both.  At bottom, Plaintiff's lawsuit is based on speculative possibilities of harm that may occur in the future.  The Complaint, which reflects a contrived attempt to manufacture standing where none exists, must be dismissed.  As a second, independent basis for dismissal, Plaintiff does not plausibly plead any claim against Duda.

## Background

Duda is a privately-owned business headquartered in Oviedo, Florida.  (*See* Compl. ¶ 8.) Duda operates in the agricultural, food production, and real estate space.  (*Id.* ¶ 1.)

In July 2022, Duda learned that its computer network was accessed by an unknown and unauthorized criminal actor (the "Data Incident").  (Compl. ¶ 3 (citing Notice of Data Breach (the "Notice"), https://www.duda.com/notice-of-data-breach/ (last visited Nov. 10, 2022)[1]).)  Duda immediately took action.

---

[1] Plaintiff cites this Notice extensively throughout his Complaint and relies on direct quotations from the Notice to describe the Data Incident.  (*See, e.g.*, Compl. ¶¶ 3, 4, 35). The Court can consider the Notice at this stage, as it is central to Plaintiff's Complaint, Plaintiff has incorporated the Notice within his Complaint by reference, and the contents of the Notice can readily be determined from Duda's publicly accessible website.  *See* Fed. R. Evid. 201(b)(2); *see also Cafra v. RLI Ins. Co.*, 8:14-CV-843-T-17EAJ, 2015 WL 690687, at *2 (M.D. Fla. Feb. 18, 2015) (court can consider "well-pleaded factual allegations" and "documents central to or referenced in the complaint" at the motion-to-dismiss stage).

Duda's investigations revealed that in June and July 2022, an unauthorized third-party used sophisticated security techniques to gain access to Duda's information technology systems. (Compl. ¶ 3 (citing Notice).) On July 9, 2022, the cybercriminals deployed ransomware on Duda's systems and downloaded files that included personally identifiable information ("PII"). (*Id*.) According to Duda's Notice, Duda did not know the exact scope of the information that was downloaded. *See* Notice.

Promptly after discovering the Data Incident, Duda restored the functionality and security of its data systems. (*Id*.) Duda already had "measures to protect the personal information it maintains," and it also engaged outside consultants to strengthen Duda's information security systems. (*Id*.) Duda provided twenty-four (24) months of credit monitoring services to individuals at no cost to them. (*Id*.)

On August 3, 2022, Duda notified the individuals potentially affected by the Data Incident. (*Id*.; Compl. ¶ 3.) Plaintiff is a former employee of Duda, and he received a copy of the Notice. (Compl. ¶ 24.) On August 29, 2022, Plaintiff filed his Complaint against Duda. (Doc. 1.) Plaintiff asserts claims for negligence (Count I), breach of implied contract (Count II), intrusion into seclusion (Count III), and unjust enrichment (Count IV).

## **Legal Standard**

Duda moves to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

### A.   **Rule 12(b)(1)**

Plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted); *see also Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 411-12 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). At the pleading stage, that burden requires Plaintiff to "clearly allege facts demonstrating each element" of standing— a doctrine rooted in the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Spokeo*, 578 U.S. at 338 (internal marks and citations omitted).

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Dem. Nat. Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008).  As the Eleventh Circuit cautioned,

> [T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. ... If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury.

*Id.* at 1301 (citations and marks omitted); *see also Pankey v. Aetna Life Ins. Co.*, 6:16-cv-1011-Orl-37GJK, 2017 WL 1089330, at *2 (M.D. Fla. Mar. 23, 2017) ("the Court **must** dismiss if the plaintiff -- who bears the burden of establishing

jurisdiction -- fails to establish the existence of standing" (emphasis added; citations and marks omitted)).   All plaintiffs "must establish that they have standing to sue" -- an "irreducible constitutional minimum" -- by satisfying each of three distinct elements:

> The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

*Clapper*, 568 U.S. at 408 (citations and internal marks omitted); *Spokeo*, 578 U.S. at 338 (citations omitted). The failure to establish any of one of these requirements at the pleading stage -- including by alleging plausible facts to demonstrate each element -- is fatal. *See Tsao v. Captiva MVP Rest. Partners, Ltd. Liab. Co.*, 986 F.3d 1332, 1337 (11th Cir. 2021); *Spokeo*, 578 U.S. at 338.

The "first and foremost of standing's three elements" -- injury in fact -- itself has several requirements that must be satisfied for a plaintiff to demonstrate standing to bring a claim in federal court.  *Id.* at 338-39.  To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is both (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560).

**B.**   **Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), Plaintiff has an "obligation to provide the grounds for his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The allegations

must raise a right to relief above the speculative level. *Id.* The Court should "begin [its] analysis by identifying 'pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Pankey*, 2017 WL 1089330, at *2 (quoting *Iqbal* and explaining that "[a]fter disregarding allegations that 'are not entitled to the assumption of truth,' the court must determine whether the complaint includes 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'").

## Argument and Memorandum of Legal Authority

Plaintiff lacks standing, and without standing, Plaintiff's claims must be dismissed. Plaintiff also fails to allege necessary elements and sufficient facts to support his claims. These pleading deficiencies provide another basis for dismissal.

## I.    Plaintiff Lacks Standing.

Plaintiff fails to allege any injury in fact. Plaintiff's vague and conclusory references to harms Plaintiff "ha[s] suffered and will suffer" do not demonstrate any actual harm, and none of his claimed harms give rise to any cognizable injury. Plaintiff also fails to allege any potential future harm that is fairly traceable to Duda, a separate element of standing that Plaintiff must establish at the outset.

### A.    Plaintiff Fails to Allege An Injury in Fact.

Plaintiff's alleged "injury" consists of the following bald assertions of harm--each of which fails as a matter of law to establish standing to sue:

- "loss of time" spent "on issues related to the Data Breach," including time spent "verifying the legitimacy of the Notice," among other things (Compl. ¶ 83);

- "damages to and diminution in the value of his PII" (*id.* ¶ 84);

- "lost time, annoyance, interference, and inconvenience" (*id.* ¶ 85);

- "emotional distress," "anxiety and increased concerns" (*id.* ¶¶ 85-86); and

- "increased risk of fraud, identity theft, and misuse resulting from his PII" (*id.* ¶ 87).

None of these alleged injuries confer standing.

### 1.  <u>Plaintiff Fails to Allege a Concrete Injury.</u>

a.  <u>Increased Risk of Future Harm, Including Identity Theft</u>

Plaintiff alleges an increased risk of future harm, specifically, an increased risk of identity theft, fraud, and misuse, based on the exposure of his PII.  (*See, e.g.*, Compl. ¶¶ 87, 89, 130.)  But Plaintiff fails to establish a concrete injury, because "conclusory allegations of an 'elevated risk of identity theft' -- or ... a 'continuing increased risk' of identity theft -- [are] simply not enough' to confer standing." *Tsao*, 986 F.3d at 1343 (citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 933 (11th Cir. 2020)); *Everhart v. Colonial Pipeline Co.*, 1:21-CV-3559-MHC, 2022 WL 3699967, at *3-4 (N.D. Ga. July 22, 2022) (plaintiffs' "conclusory allegations that they suffered damages in the form of continued risk of future identity theft, fraud, or misuse of their PII," assert "hypothetical and speculative future harm [that] . . . fail to allege a cognizable injury."); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14,

25 (D.D.C. 2014) ("increased risk is not by *itself* [a] concrete, particularized, and actual injury for standing purposes") (internal marks and citation omitted).

A threatened injury must be "certainly impending" to constitute an adequate injury in fact, and "'allegations of possible future injury' are not sufficient." *Clapper*, 568 U.S. at 401, 409. Further, "a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 410.

Here, Plaintiff does not establish a future injury that is "certainly impending." Plaintiff's allegations actually belie any certainly impending injury, as Plaintiff alleges that he faces threats and increased risk "***for years to come***," and even for his lifetime. (Compl. ¶¶ 14, 74, 89 (emphasis added).)

Plaintiff does not allege any actual misuse of his PII either. *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283 (M.D. Fla. 2016) (after data incident exposing financial information, number of plaintiffs who experienced fraudulent charges is "influential factor" in determining whether future harm is "certainly impending"). Plaintiff alleges that his PII "*may* be put to a variety of fraudulent uses" and "*can* be sold." (*See, e.g.*, Compl. ¶¶ 60, 66 (emphasis added).) These hypothetical scenarios, along with Plaintiff's other allegations about a series of events that could theoretically take place one day, combined with no allegation of actual misuse, cannot demonstrate an injury in fact.

Of note, Plaintiff does allege that he "ha[s] suffered and will suffer . . . identity theft." (*See* Compl. ¶¶ 127, 161.) But Plaintiff alleges ***no facts*** in support

of this highly conclusory allegation.  *Spokeo*, 578 U.S. at 338; *see also Gonzalez v. Kellogg Co.*, 8:15-CV-32-T-24TBM, 2015 WL 1538151, at \*1 (M.D. Fla. Apr. 7, 2015) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").  It is also unclear whether Plaintiff is alleging that he has already suffered identity theft, or (consistent with his other allegations) that Plaintiff is at an increased risk of identity theft. Critically, another court in the Middle District of Florida recently concluded that a complaint with identical allegations about plaintiffs who "have suffered and will suffer" harms after a data incident "presents a threshold fatal deficiency, namely, that Plaintiffs allege throughout that they 'have suffered and will suffer' injuries but fail to establish what injuries they have allegedly suffered versus those injuries they allegedly "will suffer" sometime in the future."  *Baron v. Syniverse Corp.*, 8:21-CV-2349-SCB-SPF, 2022 WL 6162696, at \*6 (M.D. Fla. Oct. 7, 2022).  In sum, Plaintiff's allegations about increased risks of future harm do not establish an injury in fact.

b. <u>Lost Time</u>

Plaintiff alleges that he lost time researching and mitigating hypothetical consequences of the Data Incident.  (Compl. ¶¶ 83, 85, 139, 161.)  Plaintiff alleges that his time spent was "unproductive" and "took away" from other things Plaintiff could have been doing.  (*Id.* ¶ 83.)  "Lost time," like Plaintiff alleges here, cannot establish standing when there is no certainly impending or substantial risk of harm.  *See Tsao*, 986 F.3d at 1337, 1339 ("if the hypothetical harm alleged is not

8

'certainly impending,' or if there is not a substantial risk of the harm, a plaintiff cannot conjure standing by inflicting some direct harm on itself to mitigate a perceived risk."); *see also Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1071 (S.D. Fla. 2020) ("plaintiff's alleged loss of privacy and wasted time … are not qualitatively 'the kind of harm that constitutes an injury in fact'") (citing *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019)).

In *Tsao*, the Eleventh Circuit rejected a plaintiff's attempt to "conjure standing" via plaintiff's lost time "spent safeguarding his accounts." *Tsao*, 986 F.3d at 1345. The Eleventh Circuit explained that this self-infliction of an injury would destroy principles of standing. *Id.* ("To hold otherwise would allow 'an enterprising plaintiff … to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear.' The law does not permit such a result.") (citing *Clapper*, 568 U.S. at 416). Plaintiff similarly attempts to manufacture standing by asserting lost time spent "monitoring" his accounts.[2] He also claims lost time in the form of "verifying the legitimacy of the Notice and researching the Data Breach." (Compl. ¶ 83.) These allegations are insufficient to support standing.

c. <u>Diminution in the Value of PII</u>

Plaintiff's conclusory claim that he suffered an "actual injury" based on diminution in the value of his PII also fails. (Compl. ¶ 84.) Plaintiff has not even

---

[2] This is even more tenuous here, where Duda offered free monitoring services. (*See* Compl. ¶ 39.) Plaintiff's vague claims of "expenses" or "costs" incurred should be rejected, as they are conclusory allegations clearly injected to manufacturing standing. (*Id.* ¶ 127.)

alleged what PII he supposedly provided to Duda[3], let alone that this PII has any "independent monetary value that is now less than it was" before the Data Incident. *See In re 21st Century Oncology Cust. Data Sec. Breach Litig*., 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) (citing, among others, *Welborn v. Internal Rev. Serv*., 218 F.Supp.3d 64, 78 (D.D.C. 2016) ("Courts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value.") (collecting cases)); *Torres*, 195 F. Supp. 3d at 1284 (allegations that plaintiffs' PII "lost value" following data breach are insufficient to confer Article III standing).  In short, Plaintiff's "lost value" argument does not establish a concrete injury.  Alleged loss of control or confidentiality of the data fall short for the same reason.  (*See* Compl. ¶¶ 127, 139.)

### d.  Other Miscellaneous Harms

Plaintiff also alleges that he suffered anxiety, annoyance, emotional distress, and inconvenience because of the Data Incident.  (*See, e.g*., Compl. ¶¶ 85, 86, 128.) The allegations are also conclusory and do not demonstrate a concrete injury. *Frater v. Lend Smart Mortgage, LLC*, 22-22168-CIV, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022) ("a conclusory recitation of harms like 'annoyance,' 'aggravation,' and 'wasted time,' means that [plaintiff] has still failed to clear the qualitative floor for a concrete injury."); *Baron*, 2022 WL 6162696, at *5-6 ("anxiety      and      emotional      distress"      resulting      from      exposure      of

---

[3] In one allegation, Plaintiff alleges that he is at an increased risk of future harms because of his PII, "especially his Social Security Number."  (Compl. ¶ 87.)  But Plaintiff never alleges what he allegedly shared with Duda or any other details about that exchange of information.

"private information" did not satisfy Article III's injury-in-fact requirement); *Preisler v. Eastpoint Recovery Group, Inc.*, 20-CV-62268-RAR, 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021) (a plaintiff "cannot rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury"); *see also Grigorian*, 838 Fed. Appx. at 392, 394 (affirming dismissal despite plaintiff's allegations of "harm, including invasion of her privacy, aggravation, annoyance, and intrusion on seclusion"). For all of the reasons discussed, Plaintiff fails to allege a concrete or actual injury.

## 2. **Plaintiff Fails to Allege an Imminent Injury.**

Plaintiff also fails to establish an imminent injury, which he must demonstrate as part of the injury in fact requirement. As explained above, Plaintiff has not demonstrated how his alleged injuries are "certainly impending," versus speculative or hypothetical. *See Lujan*, 504 U.S. at 564 n.2 ("although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending'").

*Stapleton on behalf of C.P. v. Tampa Bay Surgery Ctr., Inc.*, 8:17-CV-1540-T-30AEP, 2017 WL 3732102, at *1 (M.D. Fla. Aug. 30, 2017) is particularly instructive. *Stapleton* involved a data incident where hackers accessed a database with children's names, dates of birth, and social security numbers. *Id.* The court in *Stapleton* determined that plaintiffs failed to establish any imminent injury for three reasons, each of which applies to the instant case. First, the court found that

"Plaintiffs are unable to identify a single proposed class member who has had their Sensitive Information misused as a result of the data breach." *Id.* at 3. Accordingly, "[t]he lack of a single, identifiable instance of identity theft . . . indicates that there is no substantial risk of imminent injury." *Id.* Second, the defendant in *Stapleton* "lessened Plaintiffs' risks of imminent injury by providing free credit monitoring to all of those potentially affected by the data breach." *Id.* And finally, the plaintiffs could not establish an imminent injury because their allegations "rely on a chain of inferences that is too attenuated to constitute imminent harm," including that their own information was actually viewed and that someone will one day use the information. *Id.*

As in *Stapleton*, Plaintiff's failure to allege any actual misuse of PII weighs against a finding of imminent injury. *Id.* at 3. *See also Baron*, 2022 WL 6162696, at *10 (M.D. Fla. Oct. 7, 2022) ("Plaintiffs' failure to identify any misuse of their personal private communications or data weighs against finding a substantial risk of imminent injury."). And Duda's furnishing of free credit monitoring services also lessens the risk of any imminent injury to Plaintiff. (*See* Compl. ¶ 39 (explaining that Duda "is offering victims of the Data Breach two-years of credit and identity monitoring services.").) Plaintiff alleges that his PII "*may* be put to a variety of fraudulent uses" and "*can* be sold," and that "data thieves *can* commit a variety of crimes" involving PII, which demonstrates the attenuated chain of inferences, none of which Plaintiff alleges have happened or are certainly impending. (*See, e.g.*, Compl. ¶¶ 15, 60, 66 (emphasis added).)

Notably, the Eleventh Circuit reiterated in *Tsao* that the Supreme Court in *Clapper* established a particularly "high standard for the risk-of-harm analysis" in the context of allegations of future identity theft. *Tsao*, 986 F.3d at 1339 (quoting *Muransky* and explaining that, in the decision, "[t]his Court, sitting *en banc*, vacated the District Court's order approving the settlement and remanded with instructions to dismiss for lack of standing," after reasoning, in relevant part, that plaintiff's "naked allegations that he and the class were exposed to an 'elevated risk' of identity theft—but not that he and the class were ever actually the victims of identity theft—were not enough to confer standing"). *See also Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) ("At best, then, Plaintiff's allegations lead to a plausible inference that at some unknown time in the future, some of the putative class members may be the victim of identity theft or fraud. Even accepting as true Plaintiff's allegations about the nature of the breach – that it was an intentional attack by cybercriminals – Plaintiff only pleads facts showing that there is a non-imminent risk of possible future injury following the data breach. This is not sufficient to confer standing.").[4]

Because Plaintiff faces no actual or imminent harm, Plaintiff fails to establish standing. *See Tsao*, 986 F.3d at 1343.

---

[4] In the context of Article III standing and the perceived risk of future harm, the Supreme Court recently held that "the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210-2211 (2021); *see also Hunstein v. Preferred Collection & Mgmt. Services, Inc.*, 48 F.4th 1236, 1242-44 (11th Cir. 2022) (citing *TransUnion*). As discussed above, Plaintiff has not alleged any separate concrete harm here. Even if he had, Plaintiff still does not allege any imminent injury or harm fairly traceable to Duda.

**B.**    **Plaintiff Fails to Allege Any Fairly Traceable Harm**

In addition to failing to allege an injury in fact, Plaintiff fails to establish a harm that is fairly traceable to Duda's alleged conduct. "Article III standing requires a 'causal connection between the injury and the conduct complained of.'" *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) ("Following *Lujan*, we've said that 'an injury is not fairly traceable to the actions of a defendant if caused by the independent action of some third party not before the court.'").  As here, a "speculative chain of possibilities does not establish that injury … is fairly traceable" to the defendant's conduct.  *Clapper*, 568 U.S. at 414.

The Complaint fails to satisfy the "causation element of Article III standing" because it does not "plead and prove causation"—specifically that Duda caused Plaintiff's purported injuries. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1266 (11th Cir. 2011) ("Hollywood failed to satisfy this burden because it did not allege that the Secretary had caused Hollywood any injury. For that reason, the district court should have dismissed the complaint of Hollywood for lack of subject matter jurisdiction."); *Lujan,* 504 U.S. at 560, 562 (rejecting standing that "depends on the unfettered choices made by independent actors not before the court") (marks omitted).

Plaintiff alleges only a "speculative chain of possibilities," based on hypothetical, future harms that imagine layers of facts about what *could* happen to Plaintiff's PII after hypothetical conduct of unidentified third-parties not before this Court.  (*See, e.g.,* Compl. ¶¶ 15, 60, 66.)  Plaintiff thus fails to plausibly allege

a fairly traceable injury as required for standing. *See, e.g., Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office*, 8:12-CV-1589-T-23MAP, 2013 WL 3155280, at *6 (M.D. Fla. May 8, 2013) (relying upon *Clapper* "despite differences in the particulars of the respective actions" and dismissing complaint arising from "prospective actions of putatively ruthless IP thieves" because "actualization of the conjectural events depends upon the contingent action of a third party (an 'independent actor not before the court')"), *aff'd,* 756 F.3d 1366 (Fed. Cir. 2014).

## II. Plaintiff Fails to State Claims for Which Relief Can be Granted.

Because Plaintiff lacks Article III standing, the Court need not even consider whether Plaintiff sufficiently alleged a viable cause of action against Duda under Rule 12(b)(6). *See Collectarius Fin., LLC v. Statebridge Co.*, LLC, 8:18-CV-137-T-24 AEP, 2018 WL 807041, at *1 n.1 (M.D. Fla. Feb. 9, 2018). To the extent the Court reaches the substance of Plaintiff's claims, however, Rule 12(b)(6) provides another basis for dismissal.

### A. Plaintiff Fails to State a Negligence Claim.

To state a viable claim for negligence, a plaintiff must allege a legally recognized duty, breach of that duty, and damages proximately caused by the alleged breach. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).

Plaintiff does not plausibly allege that Duda caused Plaintiff any damages here. His proximate cause allegations are entirely conclusory and contain no supporting facts sufficient to raise a right to relief above the speculative level. *Twombly*, 550 U.S., at 555; *see also Resnick*, 693 F.3d, at 1327 (explaining that "to

prove that a data breach *caused identity theft*, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence") (emphasis added); *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1242 (S.D. Fla. 2010) ("While Plaintiff is correct that she need not use the word 'proximate,' she has not adequately pled causation . . . the allegations of negligence [in the complaint] do not meet the pleading requirements of *Iqbal* and *Twombly*.").

Since Plaintiff does not allege any cognizable harm, it necessarily results that Plaintiff cannot establish *causation* of any such harm.  Instead, the Complaint relies upon a litany of future speculative harms that may result *someday*.  (*See, e.g.*, Compl. ¶ 127.)  Notably, proximate cause is an even higher standard than Article III's "fair traceability" standard.  *Resnick*, 693 F.3d, at 1324.  Plaintiff has not pled facts sufficient to meet fair traceability, (*see supra*), and thus, Plaintiff cannot satisfy the heightened standard for proximate cause.

Separate from Plaintiff's failure to plead causation, Plaintiff also does not allege damages for his negligence claim. "Florida defines damages in negligence cases as 'some actual harm.'" *In re Brinker Data Incident Litig.*, 3:18-CV-686-J-32MCR, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020) ("Plaintiffs have alleged that they incurred fraudulent charges on their payment cards") (citation omitted); *see also Resnick*, 693 F.3d at 1324 (recognizing monetary loss as cognizable damages to support negligence claim under Florida law).  By contrast, allegations

of damage associated with potential future events, are insufficient.  *See supra*; *see also Tsao*, 986 F.3d, at 1344.[5]

Plaintiff has simply suffered no real damages.  And his allegations about causation and harm are conclusory on their face.  *Hall v. HSBC Mortg. Services, Inc.*, 581 Fed. Appx. 800, 803 (11th Cir. 2014) ("Hall's assertions of causation and damages amount only to conclusory statements and legal conclusions couched as factual allegations and, as such, do not suffice.").  For these reasons, Plaintiff's negligence claim must be dismissed.[6]

## B. <u>Plaintiff Fails to State a Breach of Implied Contract Claim.</u>

To establish an implied-in-fact contract, Plaintiff must show: "(1) a mutual intent to contract; (2) consideration; and (3) an offer and acceptance." *Strickland v. United States*, 382 F. Supp. 2d 1334, 1343 (M.D. Fla. 2005).  To start, Plaintiff's Complaint contains a wholly conclusory assertion that there was "a meeting of the minds" and a mutual understanding that Duda would safeguard Plaintiff's PII.  (Compl. ¶ 134.)  Plaintiff does not allege a single fact showing this mutual understanding.  Plaintiff alleges that he entrusted his PII to Duda.  But Plaintiff does not reference any representations by Duda regarding its treatment of his PII,

---

[5] Notably, nearly all of Plaintiff's alleged damages in his negligence claim include allegations of what Plaintiff "ha[s] suffered and will suffer," which is deficient on its face.  (Compl. ¶¶ 127-29.); *Baron,* 2022 WL 6162696, at *6.

[6] Duda also disputes Plaintiff's allegations regarding a duty imposed upon Duda.  Plaintiff alleges a duty arises from Duda collecting data from its employees, "and sharing it and using it for commercial gain."  (Compl. ¶ 34.)  Plaintiff alleges no facts to support Duda's use of data in this way.  Other allegations make clear that the information Duda collects is from employees, not consumers.  In addition, Plaintiff cannot base an alleged duty on Section 5 of the FTCA.  *See In re Brinker Data Incident Litig.*, 2020 WL 691848, at *9.

for example.  Plaintiff pleads only that *he* expected Duda to protect his PII and offers no factual reason his unilateral expectation created a contractual obligation. Plaintiff also does not allege any promise to Duda in exchange for the PII.  *See Sheffler v. Americold Realty Tr.*, 1:21-CV-1075-TCB, 2022 WL 1815505, at \*6 (N.D. Ga. Jan. 19, 2022) (dismissing breach of implied contract claim, because "Plaintiffs base their claim for breach of implied contract upon the allegation that they provided their employer [] with their personal information to obtain employment. However, as courts have held, to state such a claim requires more" and citing cases).

This Court should not accept Plaintiff's bare legal conclusion that an implied contract existed here.  Without facts to support the existence of a contract to safeguard PII, Plaintiff "failed to plausibly allege an implied contract claim." *Stephens v. Availity, L.L.C.*, 5:19-CV-236-OC-30PRL, 2019 WL 13041330, at \*6 (M.D. Fla. Oct. 1, 2019).

Even if Plaintiff could establish the existence of an implied contract, his implied contract claim would still fail for the same reason his negligence claim fails: a claim for breach of an implied contract requires causation and actual damages.

### C.   <u>Plaintiff Fails to State an Intrusion into Seclusion Claim</u>

Intrusion into seclusion is a specific invasion of privacy tort.  *Oppenheim v. I.C. Sys.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010) (citing *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003)).  Intrusion requires (i) a private quarter,

(ii) intentional physical or electronic intrusion into the private quarter by the defendant, and (iii) the intrusion be highly offensive to a reasonable person. *Id.*; *see also Ginsberg*, 863 So. 2d 156, 162; *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062-63 (Fla. 5th DCA 1991).

Invasion of privacy is an intentional tort. *Purelli v. State Farm & Cas. Co.*, 698 So. 2d 618, 620 (Fla. 2d DCA 1997). The cause of action holds the intentional intruder liable. *See* Restatement (Second) of Torts § 652B (1977) ("**One who intentionally intrudes**, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.") (emphasis added).

Throughout his Complaint, Plaintiff alleges that *someone else* interfered with Plaintiff's privacy. (*See e.g.*, Compl. ¶ 2 (describing that an unauthorized actor gained access to Duda's network).) Then, in his intrusion upon seclusion claim, Plaintiff alleges varying (and implausible) facts about the intrusion, including that *Duda itself* intentionally intruded upon its own systems and disclosed Plaintiff's PII, while at the same time alleging that the systems were the subject of "unauthorized access." (Compl. ¶¶ 144, 149.) Common sense dictates that Duda did not intentionally interfere with or unlawfully intrude upon its own systems. *Iqbal,* 556 U.S. at 663-64 ("determining whether a complaint states a

plausible claim is context specific, requir[ing] the reviewing court to draw on its experience and common sense.").[7]

Importantly, recent decisions from the Middle District of Florida on this very issue agree that intrusion claims, like Plaintiff's here, are "thinly veiled attempt[s] to transform a negligence claim into an intentional tort. . . unsupported by any legal [authority]." *Allgood v. PaperlessPay Corp.*, 3:20-CV-516-MMH-MCR, 2022 WL 846070, at *12 (M.D. Fla. Mar. 22, 2022) (dismissing invasion of privacy claim in data breach litigation); *Stephens v. Availity, L.L.C.*, 5:19-CV-236-OC-30PRL, 2019 WL 13041330, at *5-6 (M.D. Fla. Oct. 1, 2019) (plaintiff's "invasion of privacy claim fails as a matter of law.").

Plaintiff also fails to establish the other elements of this claim, which require a showing of private quarters and conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency'. . . [and] whether it is 'atrocious, and utterly intolerable in a civilized community.'" *Stoddard*, 573 So. 2d at 1062 (internal citation omitted); *Vance v. Southern Bell Tel & Tel Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993).

Plaintiff admits that the PII in question "is and was collected, stored and maintained by" Duda.  (Compl. ¶ 142.)  Thus, to the extent that any "private quarter" was intruded upon, that private quarter belonged to Duda, not Plaintiff.[8]

---

[7] It bears mentioning that Plaintiff's single allegation that Duda "intentionally intruded" on its own systems is conclusory and contains no factual support.

[8] Florida courts have indicated that the private quarter at issue refers to physical "places" such as a person's home. *See Ginsberg*, 863 So. 2d, at 162. Therefore, even if Plaintiff has a privacy interest in the PII, this information as such is not a private quarter for purposes of the intrusion claim.

As to the last element, Plaintiff offers a single legal conclusion that Duda "intrud[ed] into [his] private affairs in a manner that would be highly offensive to a reasonable person." (Compl. ¶ 145.)  This Court is not required to accept this conclusion, nor should it. Instead, this Court must consider whether Duda's alleged conduct was utterly intolerable in a civilized community.  Here, an unauthorized third party used sophisticated security exploits to overcome Duda's cybersecurity measures and gain access to its information technology systems. (Compl. ¶ 3.)  Plaintiff touts "recent high profile data breaches at other industry leading companies," (Compl. ¶ 51), and seemingly acknowledges the reality that data incidents are commonplace and not outrageous beyond all possible bounds of decency.  This Court should find that Duda did not act in a highly offensive manner, as a matter of law, and dismiss Plaintiff's intrusion claim.

### D.  <u>Plaintiff Fails to State an Unjust Enrichment Claim.</u>

To assert a claim for unjust enrichment, Plaintiff must allege facts establishing that (1) Plaintiff conferred a benefit on Duda; (2) Duda voluntarily accepted and retained the benefit conferred; and (3) it would be inequitable for Duda to retain the benefit without paying the value thereof to Plaintiff.  *See Allgood*, 2022 WL 846070, at *11 (citations omitted).

Plaintiff alleges that he "conferred a monetary benefit on Defendant, by providing Defendant with [his] valuable PII." (Compl. ¶ 154.)  Plaintiff alleges two ways in which PII may have value to criminals or to data brokers, but Duda is neither, and courts have consistently rejected the notion that PII has any

independent monetary value.  *See Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 954 (D. Nev. 2015).  Plaintiff's PII (which Plaintiff alleges with no specificity) cannot serve as the "monetary benefit" for an unjust enrichment claim.

Plaintiff then claims that Duda "enriched itself by saving the costs [Duda] reasonably should have expended on data security measures to secure" the PII. (Compl. ¶ 155.) This appears to arise from an "[understanding] that part of the benefit Defendant derived from the PII would be applied to data security efforts to safeguard the PII."  (Compl. ¶ 154.)  Even under this theory, Plaintiff's argument still boils down to Duda receiving value in the form of the PII itself.  As discussed above, the PII is not a cognizable benefit.

Additionally, Plaintiff merely recites the elements of unjust enrichment with no true factual support.  Plaintiff fails to plead facts demonstrating a plausible claim.  *See, e.g., In re Brinker Data Incident Litig*., 2020 WL 691848, at *11 ("Plaintiffs allege only conclusory statements regarding Brinker's knowledge and acceptance of the benefit.... However, there are no factual allegations supporting these elements. Thus, the unjust enrichment claim must be dismissed."); *Allgood*, 2022 WL 846070, at *11 (conclusory allegation that plaintiff conferred benefit in the form of monetary payments insufficient to plead unjust enrichment). As Plaintiff provides only conclusory allegations, the claim must be dismissed.

## III.   **Conclusion**.

Plaintiff has not established his standing to sue, because Plaintiff has not demonstrated an actual and concrete injury fairly traceable to Duda. Separately, each of Plaintiff's claims has fatal pleading defects requiring dismissal of the Complaint under Rule 12(b)(6). For all of the reasons discussed herein, Duda respectfully requests that this Court dismiss Plaintiff's Complaint.

### **LOCAL RULE 3.01(G) CERTIFICATION**

Undersigned counsel conferred with counsel for the Plaintiff by email to discuss the relief requested in this Motion, including the various grounds for dismissal raised in the Motion. Plaintiff opposes the Motion.

/s/ *Jessica Kramer*
Jessica S. Kramer
Florida Bar No. 125420
100 N. Tampa St., Suite 4100
Tampa, FL 33602
Phone: (813) 227-8500
jessica.kramer@hklaw.com
*Attorney for Defendant*